Hello, Mr. Coleman. Good morning, Your Honor. Good morning, Judge Rawlinson and the rest of the panel. My name is Ben Coleman. I represent the appellant Jeffrey Spanier. I would like to discuss two issues. First, the Speedy Trial Act claim and also our contention that the district court committed prejudicial error in failing to give a trust relationship during instruction and I'll do my best to save a little bit of time for rebuttal. Beginning with the Speedy Trial claim, I'd like to hit what I guess are probably the three main arguments made by the government. All three, I think, do not justify the delay in this case and I think the backdrop for these three points is that if you look at the contemporaneous record, there's no contemporaneous analysis being done. This is all after the fact analysis to justify the delay. The first argument is that there was this complexity finding at the beginning of the case and that somehow that carried over to the delay before the second trial and I think there are two really easy responses to that. One is factual, one is legal. The factual response is that the initial complexity delay was specifically terminated months before the first trial and there's a specific minute order terminating that initial complexity finding and so that complexity finding was done. So that's the reason that this court's precedent is very clear that just because there's a complexity finding made at the beginning of the case, that finding does not continue on throughout the history of the case. That the complexity findings have to be specifically limited in time and that's exactly why the district judge, when he granted the initial exclusion, specifically terminated it in January of 2013, months before the first trial. To what extent do we consider the fact that between the declaration of the mistrial and the second trial, numerous issues popped up, including juror issues, which the parties had to litigate. It wasn't a situation where the court declared a mistrial and due to various scheduling errors, everybody showed up post 70 day clock expiring to retry the case. Both sides were working pretty actively on various issues. Do we look at that at all? I think you should look at it, but I don't think it's going to matter in the case and I'll try to explain that. That's really the government's second argument, which is what I was going to get to. The mistrial occurs on May 31st, 2013. At that time, there are no legal issues or anything. The district judge asked the government, what do you want for a retrial? They already suggest September, October, well past the 70 day date. That's their initial suggestion. Then what happens is the judge says, alright, let's set a status for 10 days later, June 10th, and during that 10 day period, I guess there are two issues. I think these are the issues that your honor is referring to that arise. One is there is an allegation that perhaps there was some juror tampering going on. Let me make sure that I understand your argument. When the mistrial was declared, which was at the end of May, and the government asked for a trial date sometime in September before these issues arose, they'd already blown the clock. Yeah, they were already suggesting blowing the clock for no reason. That's the context. On June 10th, they show back up 10 days later for a status conference to select a firm trial date. At that point, there are these two issues, which are really non-issues. The first is the government thought maybe there was a problem with the jury, but they quickly did an investigation before June 10th even arose and found out there was no problem here. Nothing happened. The defense counsel was a little irritated by that because he felt his honor was being besmirched by something which was totally unfounded, but be that as it may, there was no issue. The other issue was the forfeiture issue. The forfeiture order was ordered against the co-defendant, and Mr. Spanier's counsel was worried that somehow that order would carry over to Mr. Spanier. The government agreed, no, that order just applies to the co-defendant, and there was no issue there at all. These two issues were already resolved by June 10th, but even if the court wanted to consider these supposed non-issues as somehow justifying a delay, if you take the period from June 10th to August 5th, when the parties show back up again and say, look, we filed no motions, there's nothing to address here, even if you were to exclude that delay, exclude that time, you're still beyond the 70 days, even if you take the original October 8th trial date, you're still beyond 70 days. These supposed non-issues don't matter. You're still beyond the 70 days. Of course, then the trial was pushed back to December, well beyond 70 days, even if you want to eliminate that time period. So there's still a speedy trial violation. The third and final argument that the government makes is, well, defense counsel needed more time to prepare. And I think the record is very clear that when the government first suggests September or October as a retrial date, what defense counsel says is, listen, I have a vacation scheduled for the last week of September and the first week of October. I can do the trial earlier, I can do it later, I just don't want it to interfere with my pre-paid vacation. That's it. Never once throughout the rest of proceedings at all does defense counsel ever ask for time for preparation. And in fact, he's always saying, look, I can do it either, I just don't want it to interfere with my vacation. That's all that's going on. So all three of these excuses, which are all after the fact, post hoc analysis, they're just belied by the contemporaneous record and this court's precedent. So for all those reasons we think that the court should reverse the convictions and remand with instructions to dismiss the indictment. Can I ask you a procedural question? If we were to dismiss the indictment in this case and the government decided to refile the indictment or file a new indictment, would there be a double jeopardy issue in this case? I would probably say no, there would not be. Why do you say that? Well typically in other speedy trial cases, when the case has been reversed, if it's not to dismiss with prejudice, it's just district court, you decide whether dismissal is with or without prejudice. If the government refiles, they've typically been allowed to go forward with the trial. I guess it's because they got a guilty verdict in the first trial. So it's like on appeal, let's say on a jury instruction claim, for example, if you were to reverse on a jury instruction claim, they would still be able to go back and retry the case. There's not a double jeopardy problem. And there wouldn't be a statute of limitations problem either? I don't think there would be. I'd have to go back and look at all the dates, but I think they would still be within the statute. Do you agree that if we do find that there was a serious statute of limitations problem here, it should be remanded to the district court judge to make a decision about whether to dismiss with prejudice or without prejudice? You mean a speedy trial? Yes. Well we've asked the court to order the court to dismiss with prejudice, but at the very least, we've asked it to be sent back down and then the district court can decide. We've asked it to go to a different district judge for that determination in accordance with this court's precedent, given what this district court's already sort of found. It put aside everything it previously found and ruled on that issue. So that would be our request. With the limited time, I did want to discuss the jury instruction issue really quickly. This is a unique case in that we had a first trial where the trust relationship jury instruction was given. The defendants acquitted on several counts, the jury hangs on the rest. Then at the second trial, the judge reversed his course, doesn't give the instruction, which was the heart of the defense and was subject to numerous questions by the first jury, and the defendants convicted. So our position is if we're correct that the trust relationship instruction should have been given, this is clearly prejudicial type error. You have good objective proof, the difference between the first trial and the second trial and the results. In this case under Lorienti, this court's case law is quite clear that in this context, if you're going to proceed on an omissions type theory, which the government did, which the jury- They disagree with that, don't they, in their brief? They said they weren't proceeding on an omissions type theory. Right, that's their- And half-truth. And that's their position in the briefs, and obviously the argument is, well, if that's the case, then why did you ask for omissions jury instructions? Then you should have asked for either affirmative misrepresentation instructions, or you should have asked for half-truth instructions. And that's what Lorienti says, is that if you want to proceed on a quote-unquote half-truth theory, at the very least, you have to request the half-truth instructions and specify, and that wasn't done in this case, and that was the whole problem. So, counsel, so are you saying that the omissions instructions should have been given for mail fraud, wire fraud, and securities fraud? Yes, for all. So, I've been looking at the model jury instructions, and they don't seem to have that trust instruction that you are advocating for. Is it error to give the model jury instructions in this case, you think? It depends on the circumstances of the case, and the model instructions obviously don't consider every conceivable fact pattern, but if the, I mean, sometimes there's clearly a trust relationship, it's not an issue in the case. Sometimes there's, it's clearly just a misrepresentation theory of fraud, it's not an issue in the case. But in this case, where the government wants to proceed on an omission theory, or a quote-unquote half-truth theory, and there's a dispute about whether there is a trust relationship between the defendant and the victims in the case, in that context, Lorienti and a long line of this court's precedent holds that there needs to be an instruction that specifies that there, that a trust relationship exists. So, the model instructions in some cases may be fine, you just, but in this particular case, and in similar type cases like Lorienti, the model instructions don't, don't cover it. And I'll save my few seconds for Rebecca. All right, thank you. We'll hear from the government. May it please the court. Joseph Orobon on behalf of the United States. One of the things that I think is important to clear up with the speedy trial clock issue is to actually look at the record and see what defense counsel really said, because it's been disputed between the two briefs what actually happened in the district court. And if you look at ER 241 through 243, you will see exactly what happened on May 31st when the mistrial was declared. Their defense counsel mentioned after the government had suggested a retrial in September that he had a pre-planned vacation, and that if it was earlier in September, he was at their service. But immediately thereafter, if you read the record, the defense counsel, the government then says they don't want to impinge on defense counsel's vacation, so sometime in October would work for the government. What does that have to do with the Speedy Trial Act? Your Honor, what that has to do with the Speedy Trial Act is it's going to show that defense counsel in this situation had just tried a very, very complex case. That complex case, which had just been decided by a jury where they hung against Mr. Spanier, that there was this discussion that Mr. Spanier's counsel wasn't asking for an earlier date, and there is case law, in particular the Ramirez case that defense counsel just cited from the Seventh Circuit, where the defense counsel was asking for that earlier date, that earlier date, and the court said, no, I'm not giving you that earlier date, I'm going to give you a later date. And they're trying to characterize that it was the government that was asking for this later date, and defense counsel was the one asking for the earlier date. Does that matter? I mean, I don't like to be mean to counsel and their vacation plans, but there's no law that says vacation plans trump the 70-day Speedy Trial Clock. That just seems like a total red herring. The district court, the defense attorney was not saying he couldn't be available within 70 days, he just, you know, have mercy on me, but that doesn't trump the Speedy Trial Act. No, I agree with you, Your Honor, it doesn't trump the Speedy Trial Act, but what was in the district court's mind, which is what Zedner holds, the findings need to be made by the district court, and the Supreme Court has clearly said that those findings can be made in the district court's mind. The point that I was trying to make, and I'm sorry if it was inarticulate, was when we get to the June 10th hearing, the next hearing where they actually set the trial dates, it's at that hearing where everybody is agreeing now that there are these other issues that have... Let me back up, because I had asked counsel this question as well. I'm still stuck on the May 31 date, because when the court said, all right, what's everybody thinking? The AUSA says, I want September. We're thinking September. That clock's blown at that point. There's no indication that the court contemporaneously considered anything that's case-specific, and so counsel said, well, I got a vacation in September. Can we do it earlier? I can do it later, and the discussions went on from there. Later issues popped up, but I'm not sure that the government or the court had in mind the fact that this case had to be retried within the 70-day clock. I think that the court did have that in mind, Your Honor, and the reason why I would say that is, if you look at the records, the very first thing the court says is, I want to set a trial date. Don't you want me to set a retrial date? Then defense counsel says... It doesn't say anything about the 70 days. Are you the attorney who tried this case? No, Your Honor. I take it there isn't a practice in the Southern District of stipulating with counsel regarding the Speedy Trial Act clock and submitting proposed findings to the court when a trial date is set beyond the Speedy Trial Clock? I know that they do that in the Central District, Your Honor. Yes, I know that that's a practice in the Central District. But the Southern District does not? We don't because we rely on defense counsel when we're talking about what dates will work for both counsel, that we're to rely on good faith when defense counsel says I have a pre-planned vacation, that we should be able to interpret that as the district court, I believe properly did in this case, that that means I need more time to prepare because I'm going on vacation and I don't want to prepare while I'm on vacation. Vacation isn't one of the basis that's permissible as excludable time under the Speedy Trial Act. I think that's the problem. I understand the practice of informally working it out and promoting collegiality by accommodating each other's schedules, but there still has to be findings that's based on the Speedy Trial Act. Your Honor, I think that the fact that the case, the complexity of the case, I respectfully disagree. I don't think it was terminated on January 23rd based on that minute order. But the court said, though, that the complexity finding was for a finite period of time. Which the court needs to do. It needs to make that finding for a finite period of time, otherwise there is error clearly. But when you look back at the record and the discussions that were going on on January 23rd, when defense counsel was asking for a continuance of that trial date until May, they were clearly discussing the complexity of the case. And Mr. Spanier's attorney clearly said in the record, I'm not going to be ready in March. I never said I was going to be ready in March when the court set this back in September. And I can't possibly be ready in March. I need more time, given the complexity and the volume of the discovery in this case. So it's reasonable for the district court, after having just tried the case and having seen the evidence itself come in and the complexity with the foreign witnesses and the way the scheme was put together, that it was reasonable on May 31st, Your Honor, that that complexity was still in the court's mind. This was a five-day trial, right? This was not a lengthy trial. This was a five-day trial. And by the time they tried it the first time, they had all the discovery and preparation behind them. Do I have the number of days that you needed for the trial? I believe the trial was five to six days, Your Honor. But I would still say that it was a complex case. And there were more than 20 witnesses that were presented at that trial. Judge Benitez does hold a very long calendar in his trial schedule. He'll go to 530 or 540, waste the jury's time. So he wants to efficiently monitor his calendar, as I think was evident in this case, as he was pushing counsel to try this case. And I think that under Zedner, the district court made the appropriate findings. Zedner says that you can make those findings on the record. What is the government's view on the questions that Judge Rawlinson raised with Mr. Coleman on double jeopardy and whether statutory limitations and whether dismissals with or without prejudice? I think if the court is going to dismiss the case, it should definitely dismiss without prejudice. I think this court could make that finding based on the clearness of the record. I don't think that this is a situation where dismissing it with prejudice would be appropriate. I don't think that there are any double jeopardy grounds, because the district court was ruling on a pretrial motion at the time that that motion was presented and decided to deny that motion. And so the case proceeded to trial. And you don't think there would be any statute of limitations issued? No, Your Honor. I think that the statute of limitations would be told. And so I think under Zedner that the district court can still have those findings in mind. And if, taking Your Honor's point, if on May 31st the complexity issues were not in the court's mind, then at most 10 days had expired between May 31st and June 10th when the court then was confronted with numerous issues, one of which was that juror misconduct issue. But it can't just be an ad hoc rationalization. The record has to support the fact that the inference that it was in the judge's mind. Because how else would we know what was in the judge's mind unless the record reasonably supports an inference that this could have been in the judge's mind, if there is something in the record reflecting some complexity in the case? And I think that that is in the record. I think Mr. Spanier's counsel spent an entire hour discussing that juror misconduct issue. And I know that they color it in the fact that the issue was resolved by the government, but Mr. Spanier's attorney wanted to file a motion. And as evidence from the record itself, he spent that time investigating those forfeiture issues and that motion on the juror misconduct issue. That juror misconduct issue threw the case into flux. It clearly made the case more complex. Because in that situation, you not only had Mr. Spanier who may be retried, but you also had Mr. McLean who may be retried. Because if there was a juror misconduct issue or a motion that had merit, then the court would have been granted that motion. Both defendants would have had to have been tried. And so that was clearly in the mind of the district judge when he set a briefing schedule, when he set a hearing date, when he set all those dates out, and he set the date out of the trial into October knowing that counsel needed that time to prepare and deal with that complex issue. So how likely is it that everyone just forgot about the Speedy Trial Act and now perhaps you're trying to salvage the Speedy Trial Act? I don't think that the parties forgot about the Speedy Trial Act at all, Your Honor. This was a complex case. And the complexity of that case, whether you're talking about the point in time on June 10th or previously, still existed. And in counsel's mind, the complexity of the case never simplified. Well, two defendants went away. Two defendants did go away. But the case when it was tried the second time lasted five days, approximately the same amount of time as it took to try two defendants the first time. And so you still had over 20 witnesses. That implies it's less complex if you have, you know, if you have five days. You have five days and you have already tried it once. And you brought in additional witnesses. You brought in the foreign witnesses that time. There was only one witness that was in addition. The foreign witnesses that testified from China and the Netherlands in the first trial testified again in the second trial. But your new witness was a cooperator. That's a pretty big addition, right? That witness was not a cooperating witness. That witness was granted immunity to testify. And so his cooperation or immunity wasn't granted until 30 days before the second trial. So he testified at the second trial and not the first trial, right? Yes, he would have. And if that October date would have been kept, as the court had indicated it would have, we don't know. And we can't speculate whether or not he would have been available for that date either. And so... And one more question. Sure. Just on a different topic. If we find that there was a violation of the Speedy Trial Act, should we address the instruction problem to assist the court if there's a retrial? I would request that the court do so. So what's your response to opposing counsel's objection to the jury instructions? With regards to the first instruction, the instruction dealing with the fiduciary duty, I think that that instruction didn't apply because Loriente was clear that when you're talking about a half-truth, once you make the statement about half of the truth, there is a duty to disclose all of the truth. And you don't have to have a fiduciary duty to do so. Well, didn't you talk about omissions, though, in the trial? During the trial, you talked about omissions, right? So how was the jury supposed to know whether or not it was supposed to find an omission or half-truth? How were they to know that? Well, the omission is the other part of the half-truth. In other words, in Loriente, they didn't talk at all about the bonus compensation. It was never mentioned. In this particular case, the 5% was disclosed and relied upon by the victims that testified, the investors. They said had they known about the 10%, they would have questioned the economics of the transaction and they wouldn't have engaged in it. And so there is an omission. There's a material omission, and that's the other half of the truth that wasn't disclosed. It sounds to me like it's a little bit confusing to call it a half-truth or an omission. And if the law says for an omission, you have to establish a trust relationship, why wouldn't you just stick with one theory, the half-truth theory, instead of calling it a half-truth or an omission? Because the other half of that truth, that omission, still needs to be material in order for it to matter in the half-truth analysis, as opposed to a pure omission where you don't say anything. So in other words, if you say something, you have to say all of the truth. You can't say half of the truth. Not saying anything at all would be a pure omission. And then therefore, there were... Then talk about pure omissions. You talked about omissions and half-truths. The trial attorneys were very clear in the record that their theory was a half-truth. And even in closing argument, they never mentioned anything about pure omissions. And so I think it would have been error to give that fiduciary instruction because it would have the jury on a theory that nobody was arguing. Why was it given the first time? It was given the first time over the government's objection, and it was suggested in the middle of trial. And the judge gave the instruction. And you can see from the first trial that it clearly confused the jury. But what do you do with Lorienti? How do you think the instructions comply with Lorienti in this case? Because Lorienti does say that the half-truth doesn't require a fiduciary duty, if that's your theory of the case. If you only say half of the truth, then you are not required to put forth a fiduciary duty. So is it your position that Lorienti didn't address the other half that's omitted? Lorienti addresses actually the three aspects, the two parts where you have a duty requirement, a fiduciary duty or another duty if you fail to disclose. And then the third is no duties required if there's a half-truth. So I think Lorienti covers all three of those aspects. And so we went with the third aspect of the half-truth. And so I think the fiduciary duty instruction, again, would have confused the jury. But this court recently in Satale-Flores, in a footnote in footnote 16, stated that we can't speculate about why the jury hung in the first case to try to use that to bootstrap and use an instruction in a second case just because you got to- Well, you can show that if there's error, that the error was not harmless. Well, I don't think that you can do that because we can't speculate on what was in the jurors' minds when they were making a decision to either vote not guilty or to hang. And I think that footnote supports that lack of speculation. All right. Thank you, Counsel. Thank you very much, Your Honor. I'll try to hit both issues. I'll start with the jury instruction. On this last point, you know how we can know that that trust relationship instruction was important because the jury asked about five or six questions about the trust relationship instruction. So that was obviously a focal point of the case. And the failure to give it at the first trial was prejudicial in this case when you look at what happened at the first trial and on specific jury instructions. And one last point on that jury instruction issue, as Your Honor is indicating, the half-truth concept is very confusing. And that's why Lorienti says, if you're going to proceed on a half-truth, at the very least, the jury instructions have to specify what a half-truth is, what the half-truth theory is, and what half-truths are you talking about, government? What are the half-truths? And none of that was done in this case. Because none of that was done, there was error. It's the same error here. On the speedy trial clock, our position, and I think some of the court's questions at least suggested it, is that it was forgotten. The 70 days were just forgotten. No one considered it. And now this is all post hoc analysis at the very end to try to justify this 70-day clock. The initial trial was five to six days, including voir dire. Okay, this is not a lengthy federal trial. I mean, the trials that I've done, many of them are much longer. Five to six days is maybe an average to short length federal trial. This was not a super complex case. And whatever complexity there was, by the time of the second trial, all the preparation had been done. The witnesses were on the stand. They had testified. Everybody knew exactly what was happening. The jury instruction issues had been briefed. All that had already been done. So whatever complications were preparing for the first trial are gone by the time you get to the second trial. And you even added an immunized witness and still had five or six days. And that's the final point, is that what really was going on here, besides people forgetting about the clock, the government wanted the delay, and they said this, they admitted this at the motion to dismiss hearing, because they wanted to immunize that witness and they needed to work out the immunity deal. So this delay was prejudicial in Mr. Spanier, because the government used this delay and admitted to use the delay to secure the immunized witness who they then presented against him. And that's one of the reasons why we think dismissals should be with prejudice, but at the very least there should be a dismissal for a new trial.
judges: Ponsor, Rawlinson, Nguyen